Rel: July 10, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2026

_____

### SC-2025-0690
_____

### Ex parte M.P.

### PETITION FOR WRIT OF CERTIORARI TO THE COURT OF CIVIL APPEALS

### (In re: W.C.M.

### v.

### M.P.)

### (Baldwin Juvenile Court: JU-19-510.02; Court of Civil Appeals: CL-2023-0615)

McCOOL, Justice.

The writ is quashed. However, in quashing the writ of certiorari, this Court does not wish to be understood as approving all the language, reasons, or statements of law in the Court of Civil Appeals' opinion. Horsley v. Horsley, 291 Ala. 782, 280 So. 2d 155 (1973).

WRIT QUASHED.

Stewart, C.J., and Shaw and Sellers, JJ., concur.

Parker, J., concurs specially, with opinion.

Mendheim, J., concurs in the result.

Wise and Cook, JJ., dissent.

Bryan, J., dissents, with opinion.

PARKER, Justice (concurring specially).

I agree with the decision to quash the writ, which is consistent with my vote to deny the certiorari petition when it first came before us.

In this case, M.P., the mother of E.H.P., seeks to terminate the parental rights of W.C.M., E.H.P.'s father. M.P.'s primary basis for seeking our discretionary review was her assertion that the decision below "conflict[s]" with binding precedent. <u>See</u> Rule 39(a)(1)(D), Ala. R. App. P. In her view, the Court of Civil Appeals did not merely review the sufficiency of the evidence supporting the termination of W.C.M.'s parental rights. Instead, M.P. contends, the Court of Civil Appeals exceeded its role as an appellate court, reweighing the evidence and wrongly substituting its own judgment for that of the juvenile court: "Specifically," she writes, "the Court [of Civil Appeals] improperly reweighed evidence, misconstrued the legal standard for abandonment and viable alternatives, and failed to give due deference to the trial court's ore tenus credibility findings which included the trial court's ability to personally observe the witnesses." M.P.'s petition, p. 3.

Given the extremely fact-intensive nature of these arguments, they do not, in my view, identify a true "conflict" warranting review by this

3

Court. Such a conflict might exist when the decision below is factually or legally irreconcilable with binding precedent. Such a conflict might also exist when the decision below materially misstates the law of this State. But that is not what we have here, where the Court of Civil Appeals held simply that the evidence, viewed as a whole, did not clearly and convincingly support a finding that the father had abandoned his daughter.

This standard for granting certiorari review may seem like a high one. And it admittedly leaves open the possibility that errors will sometimes go uncorrected by this Court. But it is the standard embodied in our rules. It is also the standard that will most effectively respect the proper institutional roles of our Court and of the intermediate appellate courts.

BRYAN, Justice (dissenting).

I respectfully dissent from the Court's decision to quash the writ of certiorari we issued in this case. We issued the writ to determine whether the Court of Civil Appeals' decision, W.C.M. v. M.P., [CL-2023-0615, May 23, 2025] ___ So. 3d ___ (Ala. Civ. App. 2025)(opinion on remand from the Alabama Supreme Court)("W.C.M. II"), is in conflict with prior decisions of that court holding that an appellate court may not reweigh the evidence presented to a juvenile court and prior decisions concerning "abandonment" in the context of terminating parental rights, as defined by § 12-15-301(1), Ala. Code 1975.

Regarding whether the Court of Civil Appeals has impermissibly reweighed the evidence presented, I agree with Judge Fridy's dissenting opinions that the Baldwin Juvenile Court ("the juvenile court") could have reasonably concluded that clear and convincing evidence was presented to support terminating the parental rights of W.C.M. ("the father"). See W.C.M. II, ____ So. 3d at ____ (Fridy, J., dissenting); and W.C.M. v. M.P., [Ms. CL-2023-0615, July 19, 2024] ____ So. 3d ____, ____ (Ala. Civ. App. 2024)(Fridy, J., dissenting)("W.C.M. I"), rev'd, Ex parte M.P., [Ms. SC-2024-0684, Mar. 7, 2025] ____ So. 3d ____ (Ala. 2025).

5

Regarding the issue of abandonment, I write specially to draw particular attention to a weakness in the foundation of the Court of Civil Appeals' analysis that further demonstrates its error in reversing the juvenile court's judgment in this case.

Analysis

In a footnote, the Court of Civil Appeals noted that the father's paternity of E.H.P. ("the child") was adjudicated in 2017. W.C.M. II, ____ So. 3d at ____ n.1. See Keener v. State, 347 So. 2d 398, 401 (Ala. 1977)("A verdict that the defendant is the father of the child subjects the defendant to all of the obligations for the care, maintenance and education of the child as are imposed upon fathers of legitimate children.").[1]

In analyzing the father's failure to support the child after adjudication of his paternity, the Court of Civil Appeals first stated:

---

[1]In Ex parte C.D., [Ms. SC-2025-0655, Mar. 27, 2026] ____ So. 3d ____, ____ (Ala. 2026), this Court recently held:

"[W]e now state a new standard regarding the period that a court may consider in determining whether a putative father has voluntarily forfeited his presumptive right to a child born out wedlock. The relevant period begins when 'a putative father knows, or should know, of his paternity of a child born out of wedlock.' B.F. [v. C.D., [Ms. CL-2025-0032, Aug. 22, 2025]] ____ So. 3d [____,] ____ [(Ala. Civ. App. 2025)](Moore, P.J., concurring specially)."

"Insofar as [M.P., the mother,] contended that the father's failure to pay child support or a portion of the child's expenses could support the conclusion that the father had abandoned the child or otherwise support the judgment terminating the father's parental rights, we again note that the father's child-support obligation had not yet been established."

W.C.M. II, ____ So. 3d at ____.

The court then quoted its 2024 decision in M.W. v. Marshall County Department of Human Resources, 399 So. 3d 287, 292 (Ala. Civ. App. 2024), for the following proposition: "'Without an order of child support, the juvenile court could not determine that the mother had "failed" to perform her duties to provide financial support and to meet the material needs of the children within the meaning of abandonment set forth in § 12-15-301(1)[, Ala. Code 1975].'" W.C.M. II, ____ So. 3d at ____ (emphasis added).

In support of its conclusion, M.W. cited a decision from only four years earlier, B.L. v. Elmore County Department of Human Resources, 324 So. 3d 829, 837 (Ala. Civ. App. 2020), and included a parenthetical stating that B.L. had "explain[ed] that[,] in [the] absence of [an] order requiring [a] parent to pay child support in compliance with Ala. Code 1975, § 12-15-314(e), [the] parent could not be found to have failed to pay

7

child support." 399 So. 3d at 292 (emphasis added). Similarly, in a different 2024 decision, the Court of Civil Appeals also cited <u>B.L.</u> for a "<u>holding</u> that, in [the] absence of an order requiring a parent to pay child support in compliance with Ala. Code 1975, § 12-15-314(e), [a] parent <u>could not</u> be found to have failed to pay child support." <u>J.M. v. Marshall Cnty. Dep't of Hum. Res.</u>, 399 So. 3d 280, 285 (Ala. Civ. App. 2024)(emphasis added).

Thus, the pertinent holding that the Court of Civil Appeals has derived from <u>B.L.</u> is clear: Unless a <u>court</u> has <u>ordered</u> a parent to pay child support pursuant to § 12-15-314(e), Ala. Code 1975, a juvenile court, <u>cannot</u>, as <u>a matter of law</u>, determine that the parent has failed to support the child within the meaning of "abandonment," as defined by § 12-15-301(1), Ala. Code 1975. Although stated in concrete terms, this purported rule, upon closer examination, is but mere sand.

To begin, it does not appear that <u>B.L.</u> actually articulated the holding that the Court of Civil Appeals has begun attributing to it in the past few years. Although <u>B.L.</u> noted that the father at issue in that case had not failed to comply with an order requiring him to pay child support, it also reasoned that "[t]he evidence [wa]s not clear that the father ... was

8

able to provide support for the material needs of the child during the relevant period and failed to do so." 324 So. 3d at 837. Furthermore, although B.L. analyzed whether grounds for terminating parental rights existed under § 12-15-319, Ala. Code 1975, that opinion did not specifically mention either "abandonment" or § 12-15-301(1).

In other words, B.L. did not even facially suggest that the absence of court-ordered child support had, as a matter of law, constrained a juvenile court from determining that a parent had failed to support the child within the meaning of "abandonment," as set forth in § 12-15-301(1). Put yet another way, although perhaps relevant to determining whether sufficient grounds exist for terminating parental rights, the absence of a court order requiring a parent to support his or her child is not dispositive of the question of abandonment under the actual analysis employed in B.L. -- and rightly so.

Section 12-15-301(1) defines "abandonment" as

> "[a] voluntary and intentional relinquishment of the custody of a child by a parent, or a withholding from the child, without good cause or excuse, by the parent, of his or her presence, care, love, protection, maintenance, or the opportunity for the display of filial affection, or the failure to claim the rights of a parent, or failure to perform the duties of a parent."

(Emphasis added.)

9

Section 12-15-319(a)(1) provides that abandonment is a factor to consider in determining whether sufficient grounds exist for terminating parental rights and explains that, in cases of abandonment, "proof shall not be required of reasonable efforts to prevent removal or reunite the child with the parents."  Section 12-15-319(d) provides:

> "A rebuttable presumption that the parents are unable or unwilling to act as parents exists in any case where the parents have abandoned a child and this abandonment continues for a period of four months next preceding the filing of the petition.  Nothing in this subsection is intended to prevent the filing of a petition in an abandonment case prior to the end of the four-month period."

As a separate factor for determining whether parental rights should be terminated, § 12-15-319(a)(9) lists the "[f]ailure by the parents to provide for the material needs of the child or to pay a reasonable portion of support of the child where the parent is able to do so."  Moreover, pursuant to § 12-15-314(e), "[w]hen a child is placed in the legal custody of the Department of Human Resources … and when the parent … of the child has resources for child support, the juvenile court shall order child support …."

Thus, the statutory scheme pertaining to dependency and termination-of-parental rights proceedings clearly embraces the concept

10

of a parent's support for his or her minor children. However, the duty to provide parental support for minor children and the resulting consequences for abandoning that duty are derived from the <u>common law</u> and not just these statutes. <u>See</u> <u>Ex parte M.D.C.</u>, 39 So. 3d 1117, 1130 (Ala. 2009)("A parent has a common-law duty to support his or her child."); <u>Brock v. Brock</u>, 281 Ala. 525, 531, 205 So. 2d 903, 908 (1967)("A father is primarily bound by the laws of the state, <u>and by basic morality</u>, to support his minor children." (emphasis added)); <u>Ingalls v. Ingalls</u>, 256 Ala. 321, 333, 306, 54 So. 2d 296, 306 (1951)("There is no doubt that under the common law it is the duty of a father to support his minor children."); <u>Murrah v. Bailes</u>, 255 Ala. 178, 180, 50 So. 2d 735, 737 (1951)("[T]here is a common law duty of a father to support his infant children."); <u>Scott v. Scott</u>, 247 Ala. 598, 599, 25 So. 2d 673, 674 (1946)("It is immaterial that in the decree of divorce no provision was made for the maintenance and education of the minor children of the parties. The equity court has full jurisdiction respecting the duty of the father to support his minor children (<u>Bridges v. Bridges</u>, 227 Ala. 144, 148 So. 816 [(1933)]) and it devolved upon him to maintain and educate them in a manner commensurate with his means (<u>Farmer v. Coleman</u>, 231 Ala.

11

527, 165 So. 778 [(1936)]; <u>Chandler v. Whatley</u>, 238 Ala. 206, 189 So. 751 [(1939)]."); <u>McWhorter Transfer Co. v. Peek</u>, 232 Ala. 143, 146, 167 So. 291, 293 (1936)(discussing a statute's "recogni[tion of] the common-law obligation of the father touching the maintenance, education, and care of his minor child …."); <u>Brown v. Brown</u>, 2 Ala. App. 461, 464, 56 So. 589, 590 (1911)(noting that "[t]he general doctrine of the common law" established that, "having abandoned [an] infant without providing means for its support, [the father] thereby, through his misconduct, forfeit[s] his right to its care and custody (<u>Neville v. Reed</u>, [134 Ala. 317, 32 So. 659 (1902)]; <u>Winslow v. State</u>, 92 Ala. 78, 9 [So.] 728 [(1891)]), and, this duty and obligation of support and the rights of control having devolved upon the mother (<u>Englehardt v. Yung's Heirs</u>, 76 Ala. 534 [(1884)]), she became prima facie by the fact of maternity entitled to the custody of the child (<u>Kirkbride v. Harvey</u>, 139 Ala. 231, 35 [So.] 848 [(1904)])").

Section 1-3-1, Ala. Code 1975, provides that "[t]he <u>common law</u> of England, so far as it is not inconsistent with the Constitution, laws and institutions of this state, shall, together with such institutions and laws, be the rule of decisions, and shall continue in force, except as from time

to time it may be altered or repealed by the Legislature."  (Emphasis

added.)

> "Alabama is a common-law state ….  The common law is the base upon which all of the laws of this State have been constructed, and when our courts are called upon to construe a statute, -- when they are called upon to ascertain and declare the legal effect and meaning of a legislative enactment, -- they must read the statute in the light of the common law."

Weaver v. Hollis, 247 Ala. 57, 60, 22 So. 2d 525, 528 (1945).

Proceedings to formally terminate parental rights have statutory

origins.  See M.L. v. Jefferson Cnty. Dep't of Hum. Res., 362 So. 3d 1242,

1248 (Ala. Civ. App. 2022)("Termination-of-parental-rights proceedings

are purely statutory in nature.").  However, as demonstrated above, the

parental duty of support for minor children and the consequences of

parental abandonment have common-law roots.[2]

---

[2]Presiding Judge Moore has previously expressed his view that, "under longstanding Alabama law, when clear and convincing evidence indicates that a parent has abandoned a child, that knowing, voluntary, and intentional conduct acts as a forfeiture of the parent's custodial rights to the child." R.S. v. R.G., 995 So. 2d 893, 905 (Ala. 2008)(Moore, J., concurring in the result).  According to Judge Moore,

> "[i]n enacting [Ala. Code 1975, former] § 26-18-7(c) [the predecessor statute to § 12-15-319(d)], the Alabama Legislature has modified the common  law by declaring that abandonment creates only a rebuttable presumption that the

I discern no material departure from the common-law conception of the parental duty of support from the plain meaning of the words used § 12-15-301(1). See DeKalb Cnty. LP Gas Co. v. Suburban Gas, Inc., 729 So. 2d 270, 275 (Ala. 1998)("In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature.").

To put yet a finer point on it, I see no reason to interpret the word "maintenance," as used in § 12-15-301(1), as referring to only "child support" imposed by a juvenile court pursuant to § 12-15-314(e). Although the Court of Civil Appeals has previously acknowledged the synonymous relationship between the term "maintenance," as used in § 12-15-301(1), and the term "support," that court has not welded "maintenance" under § 12-15-301(1) to "child support" under § 12-15-

---

parent is unable or unwilling to act as a parent. However, when the parent fails to rebut that presumption, grounds for termination are established and the juvenile court may terminate parental rights. Therefore, just as under the common law, unrebutted evidence of abandonment acts as a forfeiture of parental rights."

Id. at 905 n.2 (emphasis added).

14

314(e) before the past couple of years, at least as far as I can tell.[3]  See

A.E. v. M.C., 100 So. 3d 587, 598 (Ala. Civ. App. 2012)("'[M]aintenance,'

---

[3]The only two reported decisions that I can locate discussing § 12-15-301(1) and § 12-15-314(e) in the same opinion are the two 2024 decisions mentioned above -- M.W. v. Marshall Cnty. Dep't of Hum. Res., 399 So. 3d 287, 292 (Ala. Civ. App. 2024); and J.M. v. Marshall Cnty. Dep't of Hum. Res., 399 So. 3d 280, 285 (Ala. Civ. App. 2024).

Indeed, a short survey of prior decisions before that time demonstrates that the Court of Civil Appeals has historically analyzed the question of financial abandonment under § 12-15-301(1) without any reference to § 12-15-314(e).  See, e.g., M.M. v. K.H., 257 So. 3d 292, 298 (Ala. Civ. App. 2017)("The mother also contends that the evidence does not indicate that she failed to provide for the child. She states that she has continued to provide health insurance for the child since the child's birth. The mother does not contend that she provided any other form of financial support for the child."); G.S. v. Cullman Cnty. Dep't of Hum. Res., 253 So. 3d 383, 396 (Ala. Civ. App. 2017)("Webb and Welch testified that the mother had never provided DHR with any financial support for the children.  Webb testified that the mother had given the children some gifts on one occasion while Webb was assigned to the children's cases, and Welch testified that, while she was assigned to the children's cases, the mother had brought the children some Christmas ornaments, but the children would not accept them."); id. at 398 ("The record contains ample evidence establishing that the mother had voluntarily and intentionally 'withh[eld] from the child[ren], without good cause or excuse, ... her presence, care, love, protection, maintenance, or the opportunity for the display of filial affection' ...."); L.L. v. J.W., 195 So. 3d 269, 273 (Ala. Civ. App. 2015)("In the present case, the juvenile court found that the mother had abandoned the child.  Clear and convincing evidence supports that finding.  Specifically, the mother gave the child to T.W., an acquaintance of the mother's, to care for when the child was an infant.  T.W. testified that the mother, inexcusably, had not contacted the child in approximately a year and a half and had never supported the child.  Although the mother disputed some of T.W.'s testimony, the juvenile

15

i.e., support, is one of many factors to consider in determining whether a parent has abandoned a child ....").

Moreover, other prior decisions of that court and of this Court further undermine the Court of Civil Appeals' novel view of the pertinent statutory landscape. The language of § 12-15-301(1) is substantially similar to its predecessor statute, former § 26-18-3(1), Ala. Code 1975. See Ex parte L.E.O., 61 So. 3d 1042, 1046 n.2 (Ala. 2010). Former § 26-18-3 was adopted as part of the 1984 Child Protection Act, codified at former § 26-18-1 et seq., Ala. Code 1985. See A.C.B. v. A.B.B., 374 So. 3d 725, 743 (Ala. Civ. App. 2022)(plurality opinion).

In a 1987 decision involving a father who was seeking to avoid his obligation to support his child through a termination of his parental rights, this Court discussed the statutory concept of "abandonment," as set forth in the 1984 Child Protection Act. Ex parte Brooks, 513 So. 2d

---

court could have reasonably resolved that factual dispute in T.W.'s favor."); and C.C. v. L.J., 176 So. 3d 208, 213 (Ala. Civ. App. 2015)("[T]he father argues [that] the juvenile court erred in finding that he had abandoned the child. However, ... the juvenile court reasonably could have determined that ... the father had voluntarily, intentionally, and unjustifiably forgone a relationship with the child, had failed or refused to financially support the child, and had failed or refused to act as a parent toward the child.").

614, 616-17 (Ala. 1987), overruled on other grounds, Ex parte Beasley, 564 So. 2d 950, 953-54 (Ala. 1990).

In relevant part, the Court explained: "The Child Protection Act of 1984 … was not intended as a means for allowing a parent to abandon his child and thereby to avoid his obligation to support the child …. The courts of this State will not be used in the furtherance of such a purpose." Id. at 617. In other words, the Court's analysis inherently acknowledged a father's preexisting, i.e., common-law, obligation of support for his minor child and concluded that the relatively new statutory scheme dealing with abandonment should not be interpreted as having relieved the father of that common-law duty. See Weaver, 247 Ala. at 60, 22 So. 2d at 528 ("'The presumption is that the legislature does not intend to make any alteration in the law beyond what it explicitly declares, either in express terms or by unmistakable implication, and that it does not intend to overthrow fundamental principles, infringe rights, or depart from a general system of law without expressing its intention with irresistible clearness.' Duncan v. Rudulph, 245 Ala. 175, 16 So. 2d 313, 314 [(1944)].").

17

In a 1998 decision, the Court of Civil Appeals discussed other statutes that provide a vehicle for <u>retroactive</u> child-support awards in a case in which a father had argued that "the trial court [had] erred in awarding the [mother] a child support arrearage [when] the trial court [had] never entered a pendente lite child support order ...." <u>Brown v. Brown</u>, 719 So. 2d 228, 231 (Ala. Civ. App. 1998). The <u>Brown</u> court explained:

> "A basic principle of Alabama law is that a parent has a duty to support a minor child. 'Parental support is a fundamental right of all minor children.' <u>State ex rel. Shellhouse v. Bentley</u>, 666 So. 2d 517, 518 (Ala. Civ. App. 1995)(quoting <u>Ex parte University of South Alabama</u>, 541 So. 2d 535, 537 (Ala. 1989)). <u>See also</u> <u>Anderson v. Loper</u>, 689 So. 2d 118 (Ala. Civ. App. 1996). In March 1994, §§ 30-3-110[4]

---

[4]Not only does § 30-3-110, Ala. Code 1975, acknowledge a parent's <u>inherent</u> obligation to support his or her child, the <u>absence</u> of a prior court order is an express prerequisite for bringing an action under the statute:

> "There is hereby created a civil action to establish an order of retroactive support which may be brought against a non-supporting parent <u>who has a duty to support as the legal parent of a child or children but has failed to provide support.</u> The action may be brought by the parent or guardian with physical or legal custody who is providing the actual care and support for the child or may be brought by the Department of Human Resources pursuant to the provisions of [Ala. Code 197, §] 38-10-1 et seq. <u>An action under this section can be brought only if support has not previously been ordered pursuant to a divorce or other action in this or any other jurisdiction.</u>"

18

through 30-3-115, Ala. Code 1975, became effective. Those Code sections create a cause of action, maintainable by the custodial parent or guardian or the State, for retroactive child support against a nonsupporting parent. In enacting these sections, the Alabama legislature determined that, even in the absence of a court order requiring the noncustodial parent to pay support, a custodial parent or guardian can recover support for periods when the noncustodial parent made no contribution for the support of the child. ...

"....

"Given this state's policy and law requiring a parent to support a minor child, we hold that a trial court may, in its discretion, award child support retroactive to the filing of the complaint for divorce where the trial court has failed to enter a pendente lite child support order for the period in which the parent had a duty to support the child but failed to provide that support. ...

"We emphasize that this holding is not meant to eliminate the use of pendente lite orders for temporary child support during the pendency of divorce proceedings. Parents have a duty to support their minor children; the trial courts should rule on a request for temporary child support as expeditiously as possible."[5]

_____

(Emphasis added.)

[5]To the extent that the Court of Civil Appeals' invocation of § 12-15-314(e) in this and other recent cases is intended to remind juvenile courts of the requirement under that statute to order child support when appropriate, I support the reminder. However, for the reasons explained in this writing, a parent can still abandon his or her child in the absence of a child-support order entered pursuant to the requirements of § 12-15-314(e).

19

719 So. 2d at 231-32 (emphasis added). Thus, like all of Alabama's pertinent statutes, §§ 30-3-110 through 30-3-115, Ala. Code 1975, acknowledge an inherent obligation of parental support for minor children that arises directly from that relationship and not merely from the existence of a prior court order imposing that obligation.

In Judge Fridy's dissent in W.C.M. I, he noted the following regarding the circumstances of this case:

> "Based on the evidence, the juvenile court could have been clearly convinced that the father initiated his withdrawal from the child's life. The father's reliance on wanting 'his day in court' in the custody action to obtain visitation with the child or to be required to pay support for the child does not negate his voluntary disappearance from the child's life for more than a year, during which time he failed even to check on her safety when a hurricane struck Baldwin County, where the child lived. A pending custody case does not replace the father's intentional decision to refuse to maintain a relationship with a young child. To a child, a pending custody action cannot make up for missed visits, ignored holidays and birthdays, and an absence of the father from her life for at least a year."

W.C.M. I, ___ So. 3d at ___ (Fridy, J., dissenting).

As demonstrated above, the father's duty toward his child did not depend upon the existence of a court order requiring him to fulfill the natural obligations of a parent. In my opinion, the father's failure to recognize this natural duty demonstrates his total disregard for what it

20

takes to properly support a child, not to mention the love and affection required to nurture a child and a parental bond with the child.

As this Court has previously observed,

> "'[w]e should not equate the filing of "court papers" and the taking of legal positions with the establishment of human relationships. ... While those papers sit in a folder in a courthouse, children grow. They are read to and tucked in at night. They are nursed to health. They are taught. They are nurtured. They are loved. And they love back. And bonds are formed -- but not with a biological father who has allowed himself to remain absent from the child's life. See generally R.K. v. R.J., 843 So. 2d 774 [(Ala. Civ. App. 2002)]; Lehr v. Robertson, 463 U.S. 248 [(1982)]."
>
> "K.W.J. [v. J.W.B.], 933 So. 2d [1075, 1081 (Ala. Civ. App. 2005)] (Murdock, J., dissenting) ...."

Ex parte J.W.B., 933 So. 2d 1081, 1092 (Ala. 2005).

## Conclusion

A parent's natural obligation to support his or her minor child is inherent and preexists any Alabama statute. Moreover, Alabama's statutory scheme as a whole recognizes this natural duty and provides for its enforcement when necessary -- and even retroactively. As a component of this statutory regime, judicial proceedings may be brought

21

to formally terminate a parent's rights with respect to his or her child if the parent has abandoned his or her obligation to support the child.

I see nothing in the statutes governing such proceedings that limits the term "maintenance," as included in the definition of "abandonment" set forth in § 12-15-301(1), to mean only court-ordered "child support" imposed pursuant to § 12-15-314(e). Although a parent's failure to pay child support that has been imposed under § 12-15-314(e) can certainly constitute abandonment under § 12-15-301(1), the absence of such a court order does not preclude a finding of abandonment as a matter of law. In short, even if § 12-15-314(e) did not exist, parents would still have a natural duty to support their minor children, and Alabama law would provide consequences for failing to do so.

Accordingly, I disagree with the Court of Civil Appeals' misguided conclusion that, " '[w]ithout an order of child support, [a] juvenile court [cannot] determine that [a parent] ha[s] "failed" to perform her duties to provide financial support and to meet the material needs of the children within the meaning of abandonment set forth in § 12-15-301(1) ....' " W.C.M. II, ___ So. 3d at ___ (citation omitted). The Court of Civil Appeals' reliance on this flawed rule in deciding to reverse the juvenile

22

court's judgment further persuades me that this Court should reverse that court's judgment in this case. Therefore, I dissent from the Court's decision to quash the writ of certiorari.